HELENE N. WHITE, Circuit Judge,
concurring in part and dissenting in part.
I join in the majority opinion except with respect to the children’s habitual residence. As to that issue I would remand for further proceedings.
The district court correctly set forth the law applicable to this dispute, and properly applied that law to facts reasonably found based on the evidence, concluding that Mr. Panteleris exercised his custody rights, Ms. Panteleris retained the children as of May 2013, and Mr. Panteleris did not consent to Ms. Panteleris’s retention of'the children in the United States. I conclude, however, that the court’s findings regarding the children’s habitual residence are too conclusory under the circumstances to permit meaningful review of Ms. Panteler-is’s second claim of error.
Mr. Panteleris has the burden of showing that as of the date of Ms. Panteleris’s wrongful retention, the habitual residence of the children was Australia. As of May 2013, the Pantelerises’ young children were physically present in the United States for approximately fourteen months — thirteen months in Ohio. The district court well understood that the question before it was whether, as of that date, the children’s habitual residence was in Australia or Ohio — more specifically, whether they had been in their new environment “an amount of time sufficient for acclimatization and ... a degree of settled purpose from the child[ren]’s perspective.” Robert v. Tesson, 507 F.3d 981, 998 (6th Cir.2007).
Mr. Panteleris presented evidence showing that while in Australia, the children experienced all the elements that would establish Australia as their habitual residence. The court urged Ms. Panteleris to focus on the relevant time period, which, by definition, ended in May 2013. Perhaps because counsel was eager to establish that the retention commenced in December 2012, or sometime before February 2013, and to then establish that the children were “settled in [their] new environment,” Hague Convention, art. 12, Ms. Panteleris presented general testimony regarding the children’s time in Ohio and failed to confine that testimony to the period ending May 2013. Nevertheless, as the district court recognized in its Memorandum Opinion and Order, the children had lived in Ohio for thirteen months, B.P. was enrolled in kindergarten, H.P. was enrolled in preschool and was receiving therapy for autism, and the children had a relationship with Ms. Panteleris’s mother and sister. The evidence also established *353 that the youngest child, Z.P., had lived in the United States since she was four months old, and by May 2013, had spent nearly two-thirds of her life in the United States.
Ms. Panteleris could and should have given the district court more to work with in engaging with the habitual-residence issue. Still, I conclude that the district court was obliged to directly address the issue whether the habitual residence that the court correctly found existed in Australia when the family departed that country in March 2012 still existed in May 2013, or, alternatively, the children had been in Ohio “for an amount of time sufficient for acclimatization” and had established through their day-to-day lives in Ohio “a degree of settled purpose from [their] perspective.” Robert, 507 F.3d at 998. Given that the youngest child recognized no other home than Ohio, the middle child began preschool and autism treatment in Ohio, and even the oldest spent a significant portion of his life in Ohio, the district court was required to explain why Australia was still, and Ohio was not, the children’s habitual residence as of May 2013. See Robert, 507 F.3d at 996 (assuming arguendo children were residents of France during a fifteen-month stay there, but concluding that during a nine-month stay in the United States children took up new habitual residence in the United States by comparing the children’s connections to each country). The court did not do so; rather, it simply reviewed the evidence and stated its conclusion that Mr. Panteleris “established by a preponderance of the evidence that, from the perspective [of] the children, the habitual residence of the children is in Australia.”
In sum, notwithstanding Ms. Panteler-is’s failure to directly address the circumstances of the children in May 2013, the thirteen-month period is sufficiently significant given the children’s ages and schooling that the district court was obliged to explain its conclusion that the habitual residence remained in Australia.[1] Cf. Robert, 507 F.3d at 996-97 (asking whether children’s habitual residence changed after a nine-month stay in the United States and again after a three-week stay in France). I would therefore vacate and remand for further proceedings on this one issue.

. Although Ms. Panteleris challenges the district court’s finding, rather than the adequacy of its explanation, the court was required to compare the children's connections to each nation to determine which was their habitual residence as of May 2013, and in the absence of such a comparison, it is impossible to review the substance of the decision. Cf. Jenkins v. Jenkins, 569 F.3d 549, 560-61 (6th Cir.2009) (Kennedy, J., dissenting).